UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL ELDON KENNEMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-00188-SRC |
| ) | |
| BILL ANDERSON and CHARLES ) | |
| MCINTIRE, ) | |
| ) | |
| Defendants. ) | |

**<u>Memorandum and Order</u>**

Daniel Kennemore has filed two applications to proceed in district court without prepaying fees or costs. As explained below, the Court grants Kennemore's second application and denies his first as moot. Further, the Court, under 28 U.S.C. § 1915, dismisses this action.

**I.    Background**

Kennemore is a civil detainee at the Southeast Missouri Mental Health Center in Farmington, Missouri, as part of the Sexual Offender Rehabilitation and Treatment Services (SORTS) program. Doc. 1 at 2.[1] In this case, he sues Bill Anderson, the Director of SORTS, and Charles McIntyre, the Patient Rights Coordinator, in their individual and official capacities. *Id.* at 2–3. In his complaint, Kennemore alleges the following.

Kennemore uses an audio Bible as his holy scriptures because he does not read the Bible to learn its contents and audio "is best for [him] in [his] studies and Worship." *Id.* at 5. In the past 10 years, he has not used a written Bible on a regular basis. *Id.*

---

[1] The Court cites to page numbers as assigned by CM/ECF.

At some point, Kennemore requested to keep his audio Bible—which consists of 62 compacts discs—in his room at SORTS. *Id.* at 4. Kelly Johns, a SORTS staff member, approved Kennemore's request on January 28, 2014. *Id.* Anderson approved the same request in August 2020 in exchange for Kennemore agreeing to dismiss a grievance. *Id.* Around three years later, on September 29, 2023, someone confiscated Kennemore's audio Bible "under the pretext of being Labelled." *Id.* The next day, Gary Barnhouse told Kennemore that his audio Bible was being kept and that Kennemore could have only two discs "under the Privilege System." *Id.*

Kennemore then called McIntyre to ask for help in getting his audio Bible back. *Id.* McIntyre helped Kennemore "organize a Privilege Solution where the Nurse would keep [the discs] and [Kennemore] could check 2 out at a time according to [his] level in the Privilege Level System." *Id.* Kennemore also told McIntyre that his "[a]udio Bible was a [c]onstitutional [r]ight and not a [p]rivilege." *Id.* The disc limitation limited Kennemore and is inconvenient, "especially if [Kennemore] want[s] to listen to a different scripture during the night[,] which happens often." *Id.* at 5.

Kennemore filed a grievance regarding the disc limitation. *See id.*; doc. 1-3. Anderson answered the grievance, stating that "the number of CD's [sic] are a Privilege per the Privilege Level System." Doc. 1 at 5. Kennemore appealed Anderson's determination. *See id.* On December 13, 2023, McIntyre answered Kennemore's appeal by explaining that Kennemore has "access to [his] religious materials," the "Rights Committee believe[s] the accomodations [sic] [it] [was] making go beyond the normal limits on electronic accessories," and that "no rights have been violated." Doc. 1-3 at 2.

2

On December 24, 2023, Kennemore filed a second grievance. Doc. 1-3 at 5–6. This grievance related to a SORTS staff member erasing a Christmas greeting and scripture that Kennemore wrote on a chalkboard. *Id.* at 5. Other residents had written and drawn things on the chalkboard, but the SORTS staff member did not erase those writings and drawings, and they remained on the chalkboard for several days. *Id.* Kennemore's "Christmas was ruined by" the SORTS staff member's hatred for Kennemore's religion and beliefs. *Id.*

Anderson and the Consumer Rights Committee responded to the grievance. *Id.* at 5–6. The committee responded by writing that it understands how much Kennemore's "Christianity means to" him and that it "can appreciate [his] desire to share biblical verses on the" chalkboard. *Id.* at 6. But, the committee explained, it "must keep all chalkboards neutral with regard to religion." *Id.*

In this case, Kennemore claims that Anderson and McIntyre violated the Religious Land Use and Institutionalized Persons Act (RLUIPA). Doc. 1 at 1, 8. He seeks to have his entire audio Bible in his room at all times. *Id.* at 7.

**II.     Standard**

Under 28 U.S.C. § 1915(e)(2), the Court court may dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has

3

facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

III.  Discussion

    A.    **Filing fee**

On May 29, 2024, the Court ordered Kennemore to, no later than June 19, 2024, pay the $405 filing fee or submit an application to proceed in district court without prepaying fees or costs. Doc. 5. Kennemore submitted an incomplete application on June 17, 2024. Doc. 6. The application contained no information about Kennemore's income or expenses. *See id.* Kennemore instead asked the Court to review a "NUNC PRO TUNC ORDER dated Dec. 29, 2023 [and to] Please Waive Filing Fees because this is Extortion after the Freemason's[A] used Sorcery to Frame" him. *Id.* at 2.

Kennemore filed a second application to proceed without prepaying fees or costs on July 1, 2024. Doc. 8. In this application, Kennemore states he has around $300 "in cash or in a checking or savings account." *Id.* at 2. He asserts that he recently sold his "inherited property lot for" $3,000 and gave most of the proceeds to his church, his son, a friend, and other family members. *Id.* Kennemore reports that he owes an unknown amount to public defenders and $5,835.27 per month to the Missouri Department of Mental Health. *Id.*

Based on Kennemore's second application to proceed without prepaying fees or costs, the Court finds that Kennemore cannot pay the filing fee in this matter. Thus, the Court grants Kennemore's motion to proceed *in forma pauperis* and waives the filing fee. Doc. 8. The Court also denies Kennemore's first motion to proceed *in forma pauperis*, doc. 6, as moot.

    B.    **Complaint**

Kennemore brings this action under RLUIPA. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d

5

979, 986 (8th Cir. 2004); *see also Dunn v. Smith*, 141 S. Ct. 725, 725 (2021) (Kagan, J., concurring in denial of application to vacate injunction) (observing that RLUIPA "provides 'expansive protection' for prisoners' religious liberty" (quoting *Holt v. Hobbs*, 574 U.S. 352, 358 (2015))).  The statute provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).

The Eighth Circuit has noted that "RLUIPA explicitly provides for a cause of action to enforce the heightened free exercise right it creates."  *Van Wyhe v. Reisch*, 581 F.3d 639, 649 (8th Cir. 2009) (citing 42 U.S.C. § 2000cc–2(a)–(g)).  "In such a suit, if the institutionalized person 'produces prima facie evidence to support a claim,' by showing that the government practice substantially burdens the person's exercise of religion, then the government bears the burden of persuasion on every other element of the claim."  *Id.* (quoting 42 U.S.C. § 2000cc-2(b)).

And while the burden RLUIPA imposes on the government (which must show that the imposition is in furtherance of a compelling governmental interest and is the least restrictive means of doing so) is higher than that applied in constitutional cases, the Eighth Circuit has held that courts afford "a significant degree of deference to the expertise of prison officials in

6

evaluating whether they met that burden." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009) (quoting *Murphy*, 372 F.3d at 987).

The Eighth Circuit has also stated that, to constitute a "substantial burden" on the exercise of a person's religion, the government's actions:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs;
>
> must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quoting *Murphy*, 372 F.3d at 988). The Eighth Circuit, however, later observed that because the Supreme Court has clarified that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion," *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), the Eighth Circuit "alter[s] this definition somewhat in the RLUIPA context, mindful that RLUIPA's broad protection of 'religious exercise' extends even to religious practices that are not 'compelled by, or central to' a certain belief system," *Van Wyhe*, 581 F.3d at 656 (first quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.7 (8th Cir. 2008); then citing *Gladson*, 551 F.3d at 832–33); *see also Gladson*, 551 F.3d at 832–33 (noting that while the Eighth Circuit had previously acknowledged that "portions of th[e] definition [stated in *Murphy*] requiring religious beliefs to be a 'central tenet' or 'fundamental' may not apply to a RLUIPA claim," it had not needed to reach the issue in those cases (alterations in original) (quoting *Patel*, 515 F.3d at 813 n.7)); *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 750 (8th Cir. 2014) (declining to "define the contours of the inmates' religious beliefs" because RLUIPA defines "religious exercise" as "any exercise of religion, *whether or not compelled by, or central to*, a system of religious belief" (quoting 42 U.S.C. § 2000cc–5(7)(A))).

7

Kennemore asserts that Anderson and McIntire, both employees of SORTS, violated RLUIPA.  Doc. 1.  He sues them in their individual and official capacities.  *Id.* at 2–3.  The Court addresses each capacity in turn.

First, Kennemore's individual-capacity claims.  In *Barnett v. Short*, the Eighth Circuit held that "Congress's authorization of suits," under RLUIPA, "against non-recipients of federal money in their individual capacities exceeds its spending power."  129 F.4th 534, 542 (8th Cir. 2025).  The court then explained that because the defendant, a jail administrator, had not consented to any conditions of federal funding, Congress's spending power could not be "brought to bear on her directly."  *Id.* at 542–43.  Accordingly, it affirmed a district court's dismissal of RLUIPA claim against the defendant in her individual capacity.  *Id.* at 544.  Here, Kennemore does not allege any facts that, even when liberally construed, support the conclusion that Anderson and McIntire consented to any conditions of federal funding, rendering Congress's spending power unable to reach either of them.  *Id.* at 542; doc. 1.  The Court therefore dismisses Kennemore's individual-capacity RLUIPA claims.  *Id.* at 542–44.

Second, Kennemore's official-capacity claims.  Under a liberal construction of Kennemore's complaint, *Solomon*, 795 F.3d at 787, the Court finds that he has failed to state a claim upon which the Court may grant relief because Kennemore has not sufficiently pleaded that Anderson and McIntire imposed a substantial burden on Kennemore.  In his complaint, Kennemore asserts that he uses compact discs to read/listen to and learn the Bible and that he is limited to having two discs in his cell at a time.  Doc. 1 at 4–5.  He also alleges that he may exchange those two discs for two new ones at the nurse's station.  *Id.*  But Kennemore has not alleged any facts showing that the limitation on how many discs he can have at a time or the

8

exchange system significantly inhibits or curtails his religious expression or deprives him of a meaningful opportunity to engage in his religious activities.

For example, Kennemore has not asserted any facts demonstrating that the denial of having additional discs in his cell places a substantial burden on his religious exercise—he merely calls it "inconvenient."  Doc. 1 at 5; *see Van Whye*, 581 F.3d at 657.  Further, Kennemore does not allege any facts showing that he does not have a reasonable opportunity to engage in his religious exercise.  *See* doc. 1; *Van Whye*, 581 F.3d at 657 ("RLUIPA does not require the prison to permit an inmate to possess every tangential item of property that could aid the inmate's religious exercise or learning.").  Thus, the Court dismisses Kennemore's official-capacity RLUIPA claims.

## IV. Conclusion

Accordingly, the Court grants Kennemore's second [8] Application to Proceed in District Court Without Prepaying Fees or Costs and denies as moot Kennemore's first [6] Application to Proceed in District Court Without Prepaying Fees or Costs.  Additionally, for the reasons discussed, the Court dismisses this action without prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).  An Order of Dismissal will accompany this Memorandum and Order.

So ordered this 27th day of March 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE